Shawn WITTE, a minor, by his next friend and Parent, Teresa Witte, Plaintiff–Appellant,

v.

CLARK COUNTY SCHOOL DISTRICT; Robert T. Henry, individually and in his official capacity as former Director of Program Development; Beverly J. Minnear, individually and in her official capacity as Principal of Variety School; Woodard Macke, individually and in his official capacity as teacher at Variety School, Defendants–Appellees.

No. 98–16351.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1999.

Filed Dec. 2, 1999.

Sara V. Winter, Clark County Legal Services Program, Inc., Las Vegas, Nevada, for the plaintiff-appellant.

Jon M. Okazaki, Office of the General Counsel, Clark County School District, Las Vegas, Nevada, for the defendants-appellees.

Before: SCHROEDER, BEEZER, and GRABER, Circuit Judges.

GRABER, Circuit Judge:

Plaintiff Shawn Witte, through his "next friend" and parent Teresa Witte, brought this action against the Clark County School District (District) and three individuals. Plaintiff alleged violations of 42 U.S.C. § 1983, 29 U.S.C. § 794 (Rehabilitation Act), and 42 U.S.C. §§ 12101 to 12213 (Americans with Disabilities Act), along with tort claims under state law. The district court dismissed the action pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiff had failed to exhaust administrative remedies under 20 U.S.C. § 1415 (Individuals with Disabilities Education Act, or IDEA). We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the district court dismissed the action on the ground that Plaintiff's complaint failed to allege a basis for federal subject-matter jurisdiction, we take the facts pleaded in the complaint as true. See Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987).

Plaintiff was, at the time the complaint was filed in May of 1998, 10 years old. He has been diagnosed with Tourette's Syndrome, asthma, attention deficit hyperactivity disorder, and emotional problems.

Defendant District operates Variety School, a public school that provides special education for children with disabilities. Plaintiff attended Variety School from 1995 through January 1998. During that period, defendant Robert T. Henry was the Director of Program Development for the District; defendant Beverly J. Minnear was the Principal of Variety School; and defendant Woodard Macke was Plaintiff's teacher.

Plaintiff receives special education and related services from the District and has an individualized education program (IEP) pursuant to the IDEA. The IEP outlines the goals and objectives that Plaintiff seeks to accomplish in a given school year. Plaintiff alleges that the abuses described in his complaint, which will be summarized

below, served no legitimate educational purpose, but instead were inflicted solely to punish and humiliate Plaintiff for acts that were caused by his disabilities.

Plaintiff alleges that defendant Macke and his instructional assistant Michael Nelson physically, psychologically, and verbally abused him. For example, beginning in the winter of 1995, Defendants forced Plaintiff to eat oatmeal at school, even though Plaintiff is allergic to oatmeal and his mother had informed the teacher of the allergy. Macke and Nelson force-fed Plaintiff by having one of them hold Plaintiff's hands behind his back while the other forcibly fed Plaintiff oatmeal mixed with his own vomit. When Plaintiff's mother learned of the force feeding, she complained to defendant Minnear, who explained that she knew that the staff force-fed oatmeal to students; it was a form of punishment used in Variety School.

On December 6, 1995, an emergency room physician treated Plaintiff for red marks on his neck, which were diagnosed as being "consistent" with "strangulation." Nelson, under the direction of Macke, had choked Plaintiff in an attempt to make him run faster; Plaintiff kept falling down. Plaintiff has deformed feet and legs and, therefore, is unable to run fast.

Plaintiff repeatedly was subjected to a procedure known as a "take down." In a "take down," Macke or another staff person under his direction forced Plaintiff onto a mat on the ground, on his stomach, and restrained Plaintiff's arms and legs by forcibly crossing them behind his back. Macke or another staff person under his direction sat on top of Plaintiff, applying pressure to his buttocks or spine, and refused to get up until Plaintiff cried or screamed. The "take down" procedure was inflicted as punishment for actions that were related to Plaintiff's disabilities, such as his making involuntary body movements or tics.

Plaintiff had weights strapped to his ankles and was forced to walk on a treadmill, set at a high speed, in an effort to tire him or prevent him from leaving the classroom. When Plaintiff fell down on the treadmill, he was forcibly picked up and made to continue. The inability to control movements, and the impulse to move, are common characteristics of the disabilities that Plaintiff has.

Plaintiff was deprived of meals if he was unable to cut his food using the appropriate utensils. He was sprayed in the face with water if he failed to stay on task. Plaintiff was forced to stay outside on the patio with no food or water for extended periods of time. He also was made to stand in a corner of the classroom for long periods, with his arms and hands behind his back.

In addition to enduring physical abuse, Plaintiff endured emotional abuse. For example, Macke frequently yelled and screamed degrading remarks at Plaintiff. Plaintiff was forced to write sentences such as "I will not tell my mom" or "I will not tic." Plaintiff was threatened with physical harm if he ever told his mother what happened to him at school.

The foregoing abuses were inflicted on Plaintiff for making noise in the classroom, not running fast enough, not staying on task, not cutting his food, and making involuntary body movements. All these actions are characteristics of Plaintiff's disabilities and occurred because of his disabilities.

When Plaintiff's mother complained to Minnear about these classroom practices, she too was threatened. For example, Minnear threatened Plaintiff's mother that her son would be taken away from her if she tried to take him out of Variety School. Minnear and Macke likewise threatened Plaintiff that if he told his mother or others about what happened at school, he would be taken away from his mother, as well as being sent to jail for being a liar.

Eventually, however, with the agreement of the District, Plaintiff was moved to another school within the District, which

he has attended since January 1998.[1] No abuse has occurred at the new school. Plaintiff is satisfied with his new placement and with the services that he has been receiving since January 1998.

After the transfer, Plaintiff filed a complaint in federal district court. He sought only monetary relief, both compensatory and punitive. Defendants moved to dismiss the action on the ground that Plaintiff had failed to exhaust administrative remedies under the IDEA. The district court granted the motion, and Plaintiff filed this timely appeal.

## STANDARD OF REVIEW

■ "Whether exhaustion is required under the IDEA in a particular case is a question of law that [this court] reviews de novo." *Doe v. Arizona Dep't of Educ.,* 111 F.3d 678, 681 (9th Cir.1997). If a plaintiff is required to exhaust administrative remedies, but fails to, federal courts are without jurisdiction to hear the plaintiff's claim. *See Dreher v. Amphitheater Unified Sch. Dist.,* 22 F.3d 228, 231 (9th Cir.1994).

## DISCUSSION

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs." *Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1300 (9th Cir.1992). To receive federal funding, states must have in effect "a policy that assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(1). Parents, teachers, and representatives of the school district participate in the process of determining what constitutes a "free appropriate education" for each disabled child. The process results in the creation of an IEP, which is designed to meet each child's unique needs. *See* 20 U.S.C. § 1401(a)(18), (20).

Section 1415(a) of the IDEA provides that "[a]ny State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures ... to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies." It is undisputed that the District is an agency covered by § 1415.

The IDEA confers on disabled children and their parents the right to have complaints resolved at a full adversary hearing before an impartial hearing officer, under the auspices of the relevant state or local educational agency, in connection with the "identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1). When a complaint is heard initially at the local or regional level, an appeal must be available at the state level. *See* 20 U.S.C. § 1415(g). The IDEA permits aggrieved parties who are dissatisfied with the outcome of the administrative process to "bring a civil action with respect to the complaint presented [to the agency]," either in state court or in federal district court. 20 U.S.C. § 1415(i)(2)(A).

IDEA § 1415(*l*), previously found at 20 U.S.C. § 1415(f), provides:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 79[1] et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief*

---

1. Plaintiff's transfer to his new school was facilitated through the IEP process. The parties mutually agreed that Plaintiff's new school would provide him an educational program and setting that were appropriate for his needs.

*that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

(Emphasis added.) [2]

As noted, in the present action Plaintiff seeks only monetary damages. Although the IDEA allows courts to grant "such relief as the court determines is appropriate," 20 U.S.C. § 1415(i)(2)(B)(iii), ordinarily monetary damages are not available under that statute. As this court noted in *Mountain View–Los Altos Union High Sch. Dist. v. Sharron B. H.*, 709 F.2d 28, 30 (9th Cir.1983):

> [T]he wording of the statute does not disclose a congressional intent to provide a damage remedy. The statute does confer on district courts the power to give all "appropriate relief," 20 U.S.C. § 1415(e)(2), but absent legislative history suggesting the contrary, such a phrase is usually construed as a mere grant of jurisdiction to enforce and supplement the administrative procedures for identification, evaluation, and placement of the child, and not of authority to award retrospective damages.

*See also Taylor v. Honig*, 910 F.2d 627, 628 (9th Cir.1990) (stating that "injunctive or other prospective relief is ordinarily the remedy under the [predecessor to the IDEA] and damages are usually inappropriate"); *Charlie F. v. Board of Educ.*, 98 F.3d 989, 991 (7th Cir.1996) (holding "that damages are not 'relief that is available under' the IDEA").

Because Plaintiff seeks only monetary damages, which is not "relief that is available under" the IDEA, and because

all educational issues already have been resolved to the parties' mutual satisfaction through the IEP process, Plaintiff is not "seeking relief that is also available" under the IDEA, 20 U.S.C. § 1415(*l*). That being so, under the plain words of the statute, exhaustion of administrative remedies is not required. *See W.B. v. Matula*, 67 F.3d 484, 495 (3d Cir.1995) (holding that, by its terms, the IDEA "does not require exhaustion where the relief sought is unavailable in an administrative proceeding"; under the IDEA, monetary damages are not available, so exhaustion is not required).

In arguing to the contrary, Defendants rely largely on the Seventh Circuit's decision in *Charlie F.* In that case, the plaintiff was a disabled student who claimed that the defendants (his teacher, principal, and school district) had subjected him to repeated humiliation that resulted in his loss of confidence and self-esteem and disrupted his educational progress. *See* 98 F.3d at 990. After learning of the situation, the plaintiff's parents moved him to a different school, where he was not subjected to such humiliation. *See id.* at 990–91. The plaintiff then brought a civil action, alleging liability under § 1983, the Rehabilitation Act, the Americans with Disabilities Act, and state tort law, and seeking monetary damages. *See id.* at 991. The Seventh Circuit held that exhaustion of administrative remedies was required nonetheless and that the action must be dismissed. *See id.* at 993.

Although this case bears some similarities to *Charlie F.*, the instant case is readily distinguishable in significant respects. First, in *Charlie F.* there was no indication that the parties had mutually agreed—

---

**2.** This section

> restored the availability of remedies under the federal Constitution and section 504 of the Rehabilitation Act of 1973, as amended in 29 U.S.C. § 794 (1988), for deprivation of disabled students' education rights, after the Supreme Court's restrictive decision in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), that such

> remedies were unavailable. At the same time Congress reaffirmed the necessity of exhausting the IDEA's administrative procedures before seeking judicial relief on these alternate theories.

> *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1304 n. 4 (9th Cir.1992) (citations omitted).

either through informal processes available under the IDEA or through its formal procedures—to the new placement and to future educational plans and services that would address the educational component of the aftermath of the humiliation. Here, the parties have so agreed during informal administrative procedures. In other words, Plaintiff in fact has used administrative procedures to secure the remedies that are available under the IDEA.

Further, in *Charlie F.,* the court examined the reasons why the plaintiff wanted only monetary damages:

> Consider this from another angle. Why do [the plaintiff's] parents want money? Presumably at least in part to pay for services (such as counseling) that will assist in recovery of self esteem and promote his progress in school. Damages could be measured by the cost of these services. Yet the school district may be able (indeed, may be obliged) to provide these services in kind under the IDEA.

98 F.3d at 992. By contrast, in this case Plaintiff expressly eschews any claim for monetary damages to provide, or to be measured by any cost of, remedial services. Rather, the claim for damages is retrospective only.

A third distinction concerns the kind of injury alleged. In *Charlie F.,* the plaintiff's allegations centered around verbal abuse and humiliation. *See id.* at 990. Here, on the other hand, Plaintiff's allegations center around physical abuse and injury. The remedies available under the IDEA would not appear to be well suited to addressing past physical injuries adequately; such injuries typically are remedied through an award of monetary damages.

In summary, *Charlie F.* does not counsel the result that Defendants seek. Its reasoning is not controlling in the different circumstances that are present in this case.

## CONCLUSION

In the circumstances of this case, Plaintiff was not required to exhaust the formal administrative processes of the IDEA. The district court erred in reaching a contrary conclusion.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**